UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI MUSAID MUTHANA,

        Plaintiff,                        Case No. 2:11-cv-132

v.                                         Honorable Gordon J. Quist

GERALD HOFBAUER et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Ali Musaid Muthana, an inmate currently confined at the Chippewa Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). Specifically, Defendants include former MDOC Director Patricia L. Caruso, Interim MDOC Director Richard McKeon, Mail Room Supervisor Sally York Gormley, Mail Room Manager Jamie Rubick, Second Mail Room Manager K. McCarthy, Assistant Resident Unit Supervisor Mark Pokley, Resident Unit Manager Steve Niemi, and Mail Room Manager Sherri Andrew.

        Plaintiff's complaint alleges that while he was incarcerated at the Marquette Branch Prison (MBP), the majority of his incoming and outgoing mail was destroyed pursuant to MDOC Policy because it was written in a foreign language which could not be interpreted by institutional staff. Plaintiff states that letters to and from his family were written in Arabic. Plaintiff contacted the American Civil Liberties Union (ACLU) and the American Friends Service Committee (AFSC), and asked for assistance in translating the letters for prison staff. The AFSC informed Plaintiff that

they had some Arabic workers who would interpret Plaintiff's incoming mail. Plaintiff notified Defendants of this arrangement and requested that his incoming mail be forwarded to the AFSC. The mail was then interpreted by AFSC staff and the translated and original letters were returned to the prison mail room. However, Defendant McCarthy rejected the letters and returned them to the AFSC under the guise that they were written in a foreign language.

Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages, as well as declaratory and injunctive relief.

Presently before the Court are the Defendants' Motions for Summary Judgment, which were filed pursuant to Fed. R. Civ. P. 56 (docket #13 and #25). Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a

mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff claims that Defendants' conduct violated his rights under the First Amendment. Defendants state that they are entitled to summary judgment on this claim because the mail policy is valid pursuant to *Turner v. Safley*, 482 U.S. 78 (1987). The undersigned notes that prisoners retain First Amendment rights to communicate with family and friends. *Doyle v. Clark*, 2010 WL 2540740, slip op. *2 (W.D. Mich. Jun. 15, 2010) (*citing Washington v. Reno,* 35 F.3d 1093, 1100 (6th Cir.1994)). Additionally, prisoners who are not fluent in English are even more isolated while incarcerated in prison, making it more important for them to maintain communication with friends and family.

Plaintiff's right to receive mail is subject to prison policies and regulations that are reasonably related to legitimate penological interests. *Turner v. Safley,* 482 U.S. 78, 89 (1987). These interests include "security, good order, or discipline of the institution." *Thornburgh v. Abbott,* 490 U.S. 401, 404 (1989). *See also Harbin-Bey v. Rutter* 420 F.3d 571, 578 (6th Cir.2005). "[I]t is clear that incarceration does not strip inmates of all constitutional protections." *Thompson v. Campbell,* 81 Fed.Appx. 563, 567 (6th Cir.2003) (internal citations omitted). However, because "the federal judiciary is particularly ill equipped to deal with the complex and intractable problems of prison administration, we generally defer to the judgments of prison officials in upholding

regulations." *Id.* *See also Bruce v. Ylst,* 351 F.3d 1283, 1290 (9th Cir.2003) ("[F]ederal courts must remember that the duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, for which we are ill-equipped").

The Court applied four factors relevant to the inquiry whether the restriction is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the regulation and the legitimate governmental interest which it allegedly furthers, (2) whether there are alternative means by which the inmate may exercise the right impinged, (3) what impact the accommodation of the inmate's constitutional right will have on guards, other inmates, or the allocation of prison resources generally, and (4) the existence or absence of ready alternatives to the regulation in question. *Turner v. Safley*, 482 U.S. 78, 88-91 (1987) (cited in *Thornburgh*, 490 U.S. at 414-18).

The MDOC policy at issue in this case is Policy Directive 05.03.118 (eff. 9/14/2009), which provides in pertinent part:

> MM. Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:
>
> ***
>
> 17. Mail written in code, or in a foreign language that cannot be interpreted by institutional staff to the extent necessary to conduct an effective search. If facility staff are not available, the facility head may authorize the use of another reliable interpreter. Prisoners shall not be used as interpreters.

(Defendants' Exhibit 1.)

As asserted by Defendants, the first factor set forth in *Turner* is satisfied because the regulation is reasonably related to a legitimate penological interest. "Because passing on untranslated material to inmates would be tantamount to no screening whatsoever, the Policy Directive bears a rational connection to the legitimate penological interest of banning material posing a threat to prison security." *Alame v. Smetka, et al.*, No. 08-10777, 2009 WL 236073, *7 (E.D. Mich. Jan. 29, 2009).

In *Alame*, the United States District Court for the Eastern District of Michigan addressed the Policy Directive at issue in this case and noted:

> Further, instead of rejecting non-English correspondence outright, the P.D. permits the facility to authorize the use of a reliable interpreter. *Compare Kikumura v. Turner,* 28 F.3d 592, 598 (7th Cir.1994) (*citing Thornburgh,* 490 U.S. at 416, 109 S.Ct. at 1883) (Warden's ban on Japanese language material on the sole basis that it could not be "monitored or reviewed by institution staff," thereby skirting the "individualized nature of the determinations required by the regulation," did not meet the first prong of *Turner*). Further, because the MDOC Directive, as stated, applies equally to all writings incomprehensible to mailroom staff, *i.e.,* coded or non-English writings, it is content neutral. "Where 'prison administrators draw distinctions between' types of incoming mail 'solely on the basis of their potential implications for prison security' ... the practice is deemed to be 'neutral.'" *Spitsyn v. Morgan* L 714095 at *4 (W.D.Wash.2008) (*citing Thornburgh* at 415-16).

*Alame*, 2009 WL 236073, at *7.

The *Alame* court also addressed the remaining factors set forth in *Turner v. Safley*:

> The second *Turner* prong, which asks "whether inmates retain alternative means" of exercising the right to receive information, is likewise satisfied. *Amatel,* 156 F.3d at 194; *Turner,* at 90, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64. Because the [policy directive] allows for the use of an interpreter at the facility head's discretion, a non-English speaking inmate's right to receive mail is not entirely foreclosed by the MDOC's written policy. Finally, as to the third

> *Turner* factor (cost of accommodating the right) and the fourth (readily available alternatives), the [policy directive]'s contemplation of the discretionary use of interpreters addresses both the cost and "available alternative" factors.

*Id.* For the reasons set forth in *Alame*, the undersigned concludes that MDOC Policy Directive 05.03.118, ¶ MM (17) (eff. 9/14/2009) does not on its face amount to an impermissible restriction on Plaintiff's right to receive mail.

Defendants further assert that Policy Directive 05.03.118, ¶ MM (17) was not unconstitutionally applied to Plaintiff. "In considering a challenge to a prison policy as applied, the proper inquiry is whether the actions of the prison officials are reasonably related to legitimate penological interests." *Flagner v. Wilkinson*, 241 F.3d 475, 483 (6th Cir. 2001) (*citing Skelton v. Pri-Cor, Inc.,* 963 F.2d 100, 103 (6th Cir.1991), *cert. denied,* 503 U.S. 989 (1992), and *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989)). In *Alame*, the court noted that the pertinent issue was whether the defendants' refusal to obtain an interpreter for letters written in Arabic was reasonably related to a legitimate penological interest. *Alame*, 2009 WL 236073, at *8. The court stated:

> Defendants acknowledge that Plaintiff's request for a translation of the letter was denied. *Defendants' Brief* at 7. While the P.D. states that "[i]f facility staff are not available, the facility head *may* authorize the use of a reliable interpreter" (emphasis added), indicating that the decision to engage an interpreter is discretionary, Defendants offer no reason why Plaintiff's request was denied. Moreover, Defendants have failed to provide any of the factors used by the MDOC in determining whether the use of a translator is appropriate.
>
> In the absence of information regarding the denial of Plaintiff's request and the MDOC's protocol for approving certain translations and denying others, many unanswered questions remain, making a *Turner* analysis impossible. Of course, of most concern is whether the

>P.D., as applied, authorizes the use of translators so parsimoniously as to create a *de facto* ban on non-English writings. Although not addressed by this Circuit, the Seventh Circuit has found that the "summary exclusion of foreign language material is unconstitutional." *Kikumura, supra,* 28 F.3d at 598. What percentage of translation requests are accommodated by the MDOC? Are requests for Arabic translations approved at a lower rate than other non-English languages? If so, applying the third *Turner* factor, is the lower approval rate the result of cost factors or a scarcity of Arabic (as opposed to say, Spanish) interpreters, or does it stem from an impermissible purpose, such as ethnic prejudice? In the present case, did the Defendants even try to get an Arabic interpreter, and if not, why not? Or, applying the fourth prong of *Turner,* does the decision to deny or approve a translator's services depend upon the inmate's proficiency in English?
>
>Given the present dearth of information, the ultimate question remains as to whether the P.D. is arbitrarily applied pursuant to *Turner,* or constitutes a denial of Plaintiff's constitutional rights. *See Thongvanh v. Thalacker,* 17 F.3d 256, 259 (8th Cir.1994) (refusal to authorize translations of the plaintiff's incoming letters from Lao to English while excepting incoming German and Spanish correspondence from the prison's "English only" rule violated his First Amendment and equal protection rights). Plaintiff is thus faced with the dilemma described in *Figel v. Overton, supra,* at 646, fn. 2:
>
>We note that while the burden is on the prisoner to disprove the validity of the regulation at issue, *Overton v. Bazzetta,* 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), Defendants must still articulate their interest in the regulation. *See Turner,* 482 U.S. at 89. In *Overton,* for example, the Michigan Department of Corrections expressed several interests in the challenged regulations. *Overton,* 539 U.S. at 133. *Otherwise, a prisoner would be forced to hypothesize any number of potential legitimate penological interests and then disprove a reasonable relationship between each and the regulation at issue."* (Emphasis added).
>
>Given the many questions of material fact that remain, Defendants in their official capacities are not entitled to summary judgment on Plaintiff's "as applied" challenge to the Policy Directive.

*Alame*, 2009 WL 236073, at *8-9.

Defendant Hofbauer attests that while Plaintiff was receiving mail at MBP, they did not have access to an interpreter who could interpret Arabic. (Defendants' Exhibit 2, ¶ 5.) However, the undersigned notes that the pertinent question in this case is whether Defendants' refusal to allow Plaintiff to receive letters interpreted by the AFSC was reasonably related to a legitimate penological interest. *Alame*, 2009 WL 236073, at *8. In their brief, Defendants contend that there is only an allegation by Plaintiff that Defendants rejected offers by outside agencies to interpret the mail. In response to this assertion, Plaintiff offers copies of mail rejections dated March 28, 2007, and October 26, 2007. These rejections indicate that mail from the AFSC to Plaintiff was rejected pursuant to Policy Directive 05.03.118 because it was written in a foreign language which could not be interpreted by institutional staff. Plaintiff states that the rejected mail included the translated letters. (*See* Plaintiff's response to the motion for summary judgment, p. 4, and Exhibits #25 and #26, Docket #38.)

The undersigned notes that the instant situation is similar to that addressed by the court in *Alame* in that there is an absence of information regarding the denial of Plaintiff's request to receive translated versions of his letters from the AFSC. Because there is an issue of fact regarding why Plaintiff was not allowed to receive such translated letters, Defendants are not entitled to summary judgment on his First Amendment claims.

With regard to Plaintiff's equal protection claim, Defendants assert that they are entitled to summary judgment on this claim because the regulation is non-discriminatory on its face. Defendants are correct in that the policy directive does not single out a particular language for special treatment. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). As noted above, the regulation provides that mail written in code, or in a foreign language that cannot be interpreted by institutional staff to the extent necessary to conduct an effective search must be rejected. Therefore, because the policy on its face treats all mail equally, it does not violate Plaintiff's equal protection rights.

In his response, Plaintiff asserts that his equal protection rights were violated by the manner in which Defendants applied the policy to him. Plaintiff claims that Defendants singled him out and treated him differently from similarly situated prisoners. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). In this case, Plaintiff asserts that his ability to send and receive mail was implicated. The undersigned notes that this right is subject to limitation by legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401 (1989). *See also Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). In addition, as noted by Defendants, classifications based on language are not subject to strict scrutiny. *Frontera v. Sindell*, 522 F.2d 1215, 1219-20 (6th Cir. 1975).

Plaintiff asserts that Spanish speaking inmates were allowed to send and receive mail written in Spanish. Plaintiff states that he was housed in administrative segregation for 10 years and that on several occasions, Defendants returned his outgoing mail with a notation that the it was unreadable. Therefore, Plaintiff states he was treated differently from Spanish speaking inmates. In response to this assertion, Defendants state that Plaintiff is not similarly situated to Spanish speaking inmates because there are prison employees who can speak Spanish, thus there is no need for an outside interpreter in those cases. As noted above, Defendant Hofbauer attests that while

Plaintiff was receiving mail at MBP, they did not have access to an interpreter who could translate Arabic. Defendants state:

> This would be a closer case if prison officials regularly got interpreters for other languages not spoken by prison staff - say, Swahili - but refused to do so for the Arabic language. There is no evidence, however, that this is the case.

(Docket #13, p. 6.) As asserted by Defendants, Plaintiff has failed to allege facts showing that he was treated differently from similarly situated prisoners. Therefore, Plaintiff's equal protection claims are properly dismissed.

Finally, Plaintiff claims that Defendants retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that he filed grievances against the named Defendants for violations set forth in his complaint. Plaintiff was subsequently transferred to the Alger Maximum Correctional Facility (LMF), where his mail was immediately rejected by Defendant Andrew. When Plaintiff complained, Defendant Andrew denied any involvement in rejecting Plaintiff's mail. Administration

at LMF told Plaintiff that he could not send out any mail in the Arabic language because it could not be read by MDOC staff. Defendant Andrews continued to reject Plaintiff's mail and to throw his incoming mail away without allowing him to sign for it.

The undersigned notes that the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). However, Defendants state that Plaintiff has failed to allege any facts showing that the rejection of his letters was motivated by a desire to retaliate against him for engaging in protected conduct. Rather, the decision to reject the mail was based on the MDOC policy directive addressing mail written in a foreign language.

In response to this assertion, Plaintiff states that the policy provides that if facility staff are not available to interpret the mail at issue, the facility head may authorize the use of another reliable translator. Policy Directive 05.03.118, ¶ MM (17). Plaintiff asserts that he obtained an interpreter from the AFSC, but that prison staff had him transferred and continued to reject his letters. As noted above, Defendants do not respond to Plaintiff's assertion that he had obtained assistance from the AFSC in translating his letters, other than to state that Plaintiff has failed to adequately support this assertion. However, Defendants fail to offer any evidence showing that Plaintiff did not have his letters translated by an outside party. Because there appears to be an issue of fact, Defendants are not entitled to summary judgment on Plaintiff's retaliation claims.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.* As previously discussed, because Plaintiff cannot establish that his equal protection rights were violated, Defendants are entitled to qualified immunity on the equal protection claims.

Defendants assert that there was no clearly established law entitling Plaintiff to receive mail which had been translated into English by an outside group, such as the AFSC. However, as stated above, Plaintiff has a clearly established right to receive mail and to file grievances without fear of retaliation. Therefore, Defendants are not entitled to qualified immunity on Plaintiff's First Amendment claims. Moreover, the defense of qualified immunity does not apply to claims for injunctive relief. *Morse v. Frederick*, 551 U.S. 393, 432-433 (2007).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment with regard to his equal protection claim. However, issues of fact exist with regard to Plaintiff's First Amendment claims so that summary judgment is not appropriate. Accordingly, it is recommended that Defendants' Motions for Summary Judgment (Docket #13 and #25) be granted, in part, and denied as to Plaintiff's mail and retaliations claims.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated: January 11, 2012