UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALI MUSAID MUTHANA,

       Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Case No. 2:11-CV-132

GERALD HOFBAUER et al.,　　　　　　　　　　　　HON. GORDON J. QUIST

       Defendants.
_____/

**MEMORANDUM OPINION AND ORDER**

On December 13, 2012, Magistrate Judge Timothy P. Greeley issued a Report and Recommendation (docket no. 71) recommending that this Court grant Defendant Jamie Rubick's Motion for Summary Judgment (docket no. 56). Plaintiff has filed an Objection to the Report and Recommendation. When a party properly objects to any part of a magistrate judge's proposed disposition, this Court must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). After conducting a *de novo* review of the Report and Recommendation, Plaintiff's Objection, and the pertinent portions of the record, the Court concludes that the Report and Recommendation (docket no. 71) should be adopted. However, upon careful review of the record, the Court will vacate in part its prior Order dated February 14, 2012 (docket no. 50).[1] For purposes of efficiency and to mitigate potential jury confusion, the Court will reinstate as a party Defendant Gerald Hofbauer's successor in his official capacity as warden,[2] but will dismiss Plaintiff's redundant First Amendment official capacity claims against the other Defendants.

---

[1] The Court vacates its Order with respect to Muthana's as-applied First Amendment claim. The balance of the Order remains unchanged.

[2] "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d).

# I. BACKGROUND

Plaintiff Ali Musaid Muthana is an inmate in the custody of the Michigan Department of Corrections (MDOC). Muthana filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 against several MDOC employees for violations of his federal constitutional rights. In his Complaint, Muthana alleges that while he was incarcerated at the Marquette Branch Prison, the majority of his incoming and outgoing mail was confiscated and destroyed by Defendants pursuant to MDOC policy because the letters were written in Arabic and could not be interpreted by prison staff. Muthana further alleges that often times his mail was destroyed without any notice of rejection or administrative hearing. (Compl., Docket no. 1, Page ID 10.) Muthana self-identifies as an "Arabic Speaking Yeman [sic] National." (*Id.* at 7.) His family—including his mother, father, wife, sons, and brothers—and friends all live overseas in Yemen and Qatar.[3] (*Id.*) According to Muthana, MDOC policy restricts him from making overseas telephone calls and he has not had any visits from family or friends since his incarceration, making written correspondence his only form of communication with his family and friends. On an unspecified date, no later than March 2007, Muthana contacted the American Friends Service Committee (AFSC) to request assistance with translating letters from Arabic to English to assist prison staff with screening his letters. The AFSC informed Muthana that it would translate his incoming mail. Muthana alleges that he notified Defendants of the AFSC's offer and requested that his incoming mail be forwarded to the AFSC in Ann Arbor, Michigan. However, when the AFSC sent the translated letters to Muthana together with the original letters in one envelope, Defendants rejected the envelope because some materials were written in a foreign language. Muthana alleges that Defendants have violated his First and

---

[3] Plaintiff appears to have an uncle in Dearborn, Michigan, whose mail has also been rejected. (*See* Docket no. 33-3, Page ID 277.)

Fourteenth Amendment rights, and he seeks compensatory and punitive damages, and declaratory and injunctive relief.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

In deciding a motion for summary judgment, a court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). "Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010).

## III. FIRST AMENDMENT AS-APPLIED CHALLENGE

Muthana alleges that the MDOC mail policy, as Defendants applied it to him, violates the First Amendment. The magistrate judge in his prior Report and Recommendation (docket no. 41) recommended that this Court deny Defendants' Motion for Summary Judgment with respect to

3

Muthana's First Amendment as-applied claim because genuine issues of fact remained. However, this Court rejected the Report and Recommendation in part, granting summary judgment on the First Amendment claim in favor of all Defendants except McCarthy in his official capacity.[4]

In reviewing a prison regulation, a court must balance inmates' rights with the maintenance of security. *See, e.g.*, *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 1877 (1979); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987). A prisoner's right to receive mail is subject to prison policies and regulations that govern and restrict a prisoner's First Amendment rights. *Alame v. Smetka*, No. 08-10777, 2009 WL 236073, at *6 (E.D. Mich. Jan. 29, 2009) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)). Federal courts must give deference to the judgment exercised by prison administrators attempting to strike a balance between institutional security and prisoners' constitutional rights. *Thompson*, 81 Fed. App'x at 566. However, "this wide-ranging deference to the determinations of prison administrators is not boundless." *Sisneros v. Nix*, 884 F. Supp. 1313, 1325 (S.D. Iowa 1995) (citing *Turner*, 482 U.S. at 84, 107 S. Ct. at 2259). As one court has observed,

> [T]he role of the First Amendment is unique and important within the prison environment. The isolation of prison life, the lack of contact with the outside world, and the lack of intellectual stimulation increases the importance of reading and writing in the prison context. Within this isolation, the tendency to silence unpopular or unfavorable views is much greater than outside the prison walls. Balancing the constitutional rights of inmates, the necessary deference to the prison administration's decisions regarding prison security, and the role of the First Amendment within the prison setting factor into the applicable standard of review.

---

[4] In its Opinion, the Court incorrectly applied precedent related to supervisory authority for claims made against defendants in their individual, not official, capacities. This error caused the Court to incorrectly dismiss the official capacity claims against various MDOC employee Defendants. To remedy this error, the Court will vacate its prior Order with respect to Muthana's First Amendment as-applied claim (docket no. 50). "District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (internal citations omitted); *see also United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973) (noting that a district court has inherent power to reconsider interlocutory orders "when it is consonant with justice to do so"). A court's authority to reconsider orders is also reflected in Federal Rule of Civil Procedure 54, which states, "any order . . . that adjudicates fewer than all the claims . . . does not end the action . . . and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

*Id.* at 1325 n.8 (addressing the appropriate standard for evaluating English-only mail policies) (citations omitted). Moreover, as the magistrate judge has noted, prisoners not fluent in English are even more isolated while incarcerated, making it more important for them to maintain communication with family and friends.

Muthana's First Amendment claim is governed by the Supreme Court's "reasonable relationship test," as articulated in *Turner v. Safley*, 482 U.S. at 89–90, 107 S. Ct. at 2262. *Id.* A prison regulation that infringes on a prisoner's First Amendment rights is valid if it is "reasonably related to legitimate penological interests." *Id.* at 89, 107 S. Ct. at 2261. "The *Turner* Court listed four factors to be considered: (1) whether there is a valid, rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation." *Thongvanh v. Thalacker*, 17 F.3d 256, 259 (8th Cir. 1994).

In this case, the MDOC mail policy states,

> Prisoners are prohibited from receiving mail that may pose a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks under all circumstances and therefore shall be rejected:
>
> * * *
>
> 17. Mail written in code, or in a foreign language that cannot be interpreted by institutional staff to the extent necessary to conduct an effective search. If facility staff are not available, the facility head may authorize the use of another interpreter. Prisoners shall not be used as interpreters.

(MDOC Policy Directive 05.03.118 ¶ MM(17), Defs.' Ex. 1, Docket no. 14-2.)

Applying the *Turner* factors, the magistrate judge concluded that there remained issues of fact regarding why MDOC staff rejected letters translated by the AFSC. The Court agrees with the magistrate judge's analysis of Defendants' rejection of Muthana's mail translated by the AFSC and adopts it as the Opinion of the Court. However, the Court finds that the remaining issues of fact are broader than the rejection of already translated letters. For example, Muthana also contends that despite his numerous grievances, (1) Defendants made no effort to accommodate Muthana by finding an interpreter to screen Muthana's mail for security purposes, even after Muthana identified Arabic-speaking MDOC employees by name, and (2) after Muthana informed Defendants of the AFSC's cost-free offer to translate Muthana's mail, Defendants "rejected" AFSC's offer to translate, even when Muthana offered to pay all postage costs between the prison and AFSC. In effect, Muthana alleges that the mail policy, "as applied, authorizes the use of translators so parsimoniously as to create a *de facto* ban on non-English writings." *Alame*, 2009 WL 236073, at *8. "Although not addressed by [the Sixth] Circuit, the Seventh Circuit has found that the 'summary exclusion of foreign language material is unconstitutional.'" *Id.* (quoting *Kikumura v. Turner*, 28 F.3d 592, 598 (7th Cir. 1994) (denying summary judgment where defendants failed to make "any effort to try to find a translator or otherwise screen [prisoner's] incoming mail before summarily rejecting it")); *see also Thongvanh*, 17 F.3d at 259 (prison's "English only" mail rule as applied to inmate's correspondence in foreign language violated the First Amendment where inmate showed the prison had access to cost-free translation services).

The issue in this case is whether Defendants' refusal to obtain an interpreter for letters written in Arabic was reasonable, not merely whether Defendants' rejection of a translated letter violates the First Amendment. *See Alame*, 2009 WL 236073, at *8. Defendants fail in their Motions for Summary Judgment to articulate why no actions were taken to accommodate Muthana's request

6

for an interpreter. Further, Defendants have not offered any factor that MDOC staff use to determine whether the use of a translator is appropriate. Finally, Defendants have not explained why they rejected AFSC's offer to translate letters written in Arabic, or why those letters accompanied by English translation were rejected. Therefore, issues of fact remain as to whether Defendants' refusal to obtain an interpreter was unreasonable, and Defendants are not entitled to summary judgment.

Nonetheless, for purposes of judicial efficiency and to mitigate potential jury confusion, the Court will dismiss Muthana's official capacity claims against all Defendants except Hofbauer's successor. Official capacity suits brought under § 1983 "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105. Unlike individual capacity claims, "official capacity claims do not falter on a defendant's lack of personal involvement." *Alame v. Smetka*, No. 08-10777, 2009 WL 236073, at * 5 (E.D. Mich. Jan. 29, 2009) (citing *Graham*, 473 U.S. at 165–66, 105 S. Ct. at 3105; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)). However, "a governmental entity is liable under § 1983 only when the entity itself is a "moving force" behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* (citations omitted).

In this case, the Court concludes that Defendants Hofbauer, Gormley, Rubick, McCarthy, Pokley, Niemi, and Andrew enforced the mail policy that Muthana claims violated his First

Amendment rights.[5] However, because this Court erred in its prior Order by dismissing all Defendants but McCarthy, and for purposes of judicial efficiency and to mitigate potential jury confusion, this Court will dismiss Muthana's claims against all parties except Hofbauer's successor in his official capacity as warden.[6] Since Muthana's only remaining claim is his as-applied First Amendment challenge to MDOC's mail policy as enforced by Defendants in their official capacities, his claim is "in all respects other than name, to be treated as a suit against the entity," *Graham*, 473 U.S. at 166, 105 S. Ct. at 3105. Thus, his claim against Hofbauer's successor, if successful, would entitle him to the same injunctive relief as his claim against the other Defendants.

Therefore,

**IT IS HEREBY ORDERED** that the Court's Opinion (docket no. 50) is **vacated in part** with respect to Plaintiff's First Amendment as-applied claim.

**IT IS FURTHER ORDERED** that the Report and Recommendation (docket no. 71) is **ADOPTED.**

**IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment (docket nos. 13, 25 & 56) are **GRANTED in part and DENIED in part**. They are **GRANTED** with respect to all of Plaintiff's claims against all Defendants except Plaintiff's First Amendment as-applied claim against Defendant Hofbauer's successor in his official capacity.

---

[5] The Court incorporates its analysis in its prior Order (docket no. 50) with respect to qualified immunity for Muthana's as-applied First Amendment claim against Defendants in their individual capacities. Therefore, only Muthana's official capacity claim will proceed.

[6] The Court has both inherent authority to manage its cases and authority pursuant to Federal Rule of Civil Procedure 12(f) to strike from pleadings "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P 12(f); *see also Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010) (surveying cases on a court's authority to dismiss redundant official capacity claims). Although the Court recognizes that most cases dismissing redundant official capacity claims involve both a claim against the entity itself and employees of the entity, for purposes of efficiency, courts occasionally dismiss multiple official capacity claims in the prison context and allow actions to proceed solely against the warden in his official capacity. *See, e.g.*, *Johnson v. Collins*, No. 3:07-cv-211, 2007 WL 1306596, at * 2 (N.D. Ohio May 3, 2007).

**IT IS FURTHER ORDERED** that Defendant Hofbauer's successor as warden of Marquette Branch Prison is **substituted** and **reinstated** as a party to this case.

**IT IS FURTHER ORDERED** that Plaintiff's Objections (docket nos. 44 & 77) are **GRANTED in part** and **OVERRULED in part**. They are **GRANTED** with respect to Plaintiff's First Amendment as-applied challenge objections. They are **OVERRULED** with respect to Plaintiff's Equal Protection objections.

**IT IS FURTHER ORDERED** that Defendants' Objection (docket no. 42) is **GRANTED**.


Dated: March 28, 2013 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE